## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division



FEB 16 2018

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**YUSELF MUHAMMAD f/k/a BRUCE WILLIAMS,**

    Petitioner,

v.

                                   Civil Action No. **3:16CV802**

**HAROLD W. CLARKE,**

    Respondent.

### MEMORANDUM OPINION

Yuself Muhammad, formerly known as Bruce Williams, a Virginia state prisoner

proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF

No. 1) challenging his 2013 conviction in the Circuit Court of the City of Portsmouth, Virginia

("Circuit Court"). Muhammad argues that he is entitled to relief on the following grounds:

> Claim One: "[His] Fifth Amendment right against self-incrimination was violated when the police ignored [his] requests for an attorney prior to soliciting a statement that was later used against [him]."[1] (§ 2254 Pet. 3.)
>
> Claim Two: "The evidence was . . . insufficient as a matter of law to support a conviction of second-degree murder beyond a reasonable doubt[] . . . [because his] substantial right to due process was violated when the trial court rejected the mental health expert's testimony that [he] suffered from disorders that would otherwise have excused criminal liability." (*Id.* at 6.)

Respondent moves to dismiss ("Motion to Dismiss," ECF No. 15),[2] arguing that Muhammad's

claims lack merit. Muhammad has responded. For the reasons set forth below, the Motion to

Dismiss (ECF No. 15) will be GRANTED and the § 2254 Petition (ECF No. 1) will be DENIED.

---

[1] The Court corrects the spelling, punctuation, and capitalization in the quotations from Muhammad's submissions. The Court employs the pagination assigned by the CM/ECF docketing system for citations to Muhammad's submissions.

[2] The Court notes that pages 10 and 11 of Respondent's Brief in Support of Motion to Dismiss and Rule 5 Answer were not included in the submission docketed on CM/ECF. (ECF No. 17.) However, the omission of these pages does not alter the Court's analysis as set forth herein.

## I. PROCEDURAL HISTORY

After a bench trial, Muhammad was convicted of second-degree murder, and was sentenced to forty years of incarceration. (ECF No. 17–1, at 1.)

Muhammad appealed, raising the following two assignments of error that are relevant here:

1. "The trial court erred in denying Defendant's motion to suppress[] Defendant's statement because the police did not stop the interrogation of Defendant after he requested to speak with an attorney in violation of Defendant's Fifth and Fourteenth Amendment right to counsel."

2. "The trial court erred in finding Defendant guilty of second degree murder and in not finding Defendant not guilty by reason of insanity, because Defendant acted out of an irresistible impulse when he killed Carroll."

Petition for Appeal 14, *Williams v. Commonwealth*, No. 0502–13–1 (Va. Ct. App. filed on Aug. 23, 2013) (capitalization corrected). The Court of Appeals of Virginia denied the petition for appeal. (ECF No. 17–2, at 1.) A three-judge panel also denied the petition for appeal. *Williams v. Commonwealth*, No. 0502–13–1, at 1 (Va. Ct. App. Feb. 14, 2014). Subsequently, the Supreme Court of Virginia refused the petition for appeal. (ECF No. 17–3, at 1.)

On October 6, 2015, Muhammad filed a petition for a writ of habeas corpus in the Circuit Court, raising two claims that were similar to those he raised on direct appeal. Petition for Writ of Habeas Corpus Attach. 2(A), 3(B), *Muhammad v. Clarke*, No. 15–3655 (Va. Cir. Ct. filed Oct. 6, 2015). On October 6, 2016, the Circuit Court dismissed Muhammad's petition, concluding that his claims were barred in habeas corpus because he had raised the same claims on direct appeal. *Muhammad v. Clarke*, No. 15–3655, at 2–3 (Va. Cir. Ct. Oct. 6, 2016) (citing *Henry v. Warden*, 265 Va. 246, 249, 576 S.E.2d 495, 496 (2003)). Muhammad did not appeal the dismissal of his state habeas petition. On September 28, 2016, the Court received the instant § 2254 Petition.

2

## II. APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## III. ANALYSIS

In Muhammad's instant § 2254 Petition, he raises two claims. (§ 2254 Pet. 3–9.) Muhammad raised nearly identical claims on direct appeal and in his state habeas petition.[3] (ECF No. 17–2, at 1–6); Petition for Writ of Habeas Corpus Attach. 2(A), 3(B), *Muhammad v.*

---

[3] The Court notes that Respondent does not present any argument to the contrary. Specifically, Respondent states that "Petitioner's claims have been exhausted because he presented them to the Supreme Court of Virginia on direct appeal." (Mem. Supp. Mot. Dismiss 4, ECF No. 17.)

3

*Clarke*, No. 15–3655 (Va. Cir. Ct. filed Oct. 6, 2015). On direct appeal, the Court of Appeals of Virginia denied Muhammad's petition for appeal (ECF No. 17–2, at 1), and the Supreme Court of Virginia refused the petition for appeal (ECF No. 17–3, at 1). Muhammad's state habeas petition was dismissed on the ground that he had raised his claims on direct appeal, and therefore, his claims were barred in habeas corpus. *Muhammad v. Clarke*, No. 15–3655, at 2 (Va. Cir. Ct. Oct. 6, 2016).

The decision of the Court of Appeals of Virginia was the last reasoned state court decision addressing these claims, and its reasoning is imputed to the Supreme Court of Virginia, which refused further review without discussion of the claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). For the reasons set forth below, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Court of Appeals of Virginia's rejection of Muhammad's claims. *See* 28 U.S.C. § 2254(d)(1)–(2).

## A. Claim One

In Claim One, Muhammad contends that his "Fifth Amendment right against self-incrimination was violated . . . [because] the police ignored [his] requests for an attorney prior to soliciting a statement that was later used against [him]." (§ 2254 Pet. 3.)

"In *Miranda v. Arizona*, the [Supreme] Court determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 481– 82 (1981) (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). During a custodial interrogation, if a defendant "requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates

4

conversation." *Davis v. United States*, 512 U.S. 452, 458 (1994) (citing *Edwards*, 451 U.S. at 484–85). When applying this rule, "courts must determine whether the accused actually invoked his right to counsel." *Smith v. Illinois*, 469 U.S. 91, 95 (1984). "Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis*, 512 U.S. at 459 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Id.* (citations omitted). That is, "the suspect must unambiguously request counsel[] . . . 'a statement either is such an assertion of the right to counsel or it is not.'" *Id.* (quoting *Smith*, 469 U.S. at 97–98).

Muhammad raised this claim on direct appeal to the Court of Appeals of Virginia. In finding that this claim lacked merit, the Court of Appeals of Virginia aptly summarized the facts related to Muhammad's questioning by police officers:

> Before Detectives Funkhouser and Branch questioned appellant about the death of Linda Carroll, Funkhouser advised appellant of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Appellant indicated he understood his rights. Appellant then discussed with the officers at length his recollections about the day Carroll, who had lived in appellant's building, was killed, his history of drug use, and treatment for mental health issues. Appellant denied having anything to do with Carroll's death. Funkhouser asked why appellant's DNA was at the crime scene and what had happened to Carroll. The following exchange then occurred:
>> Appellant: Can I ask you a question? Can I be represented by an attorney? Because if it's going to be like that, I have to talk to my—I'm not one just—you know, I don't carry any information like that unless I talk to somebody, and I find out what's going on.
>> Funkhouser: I'm trying to tell you what's going on.
>> Appellant: I ain't telling you nothing like that, but I don't—I don't—
> After a pause, Funkhouser showed appellant a photograph of a murder victim other than Carroll. Branch asked appellant to help them understand what

happened. Appellant then went on to state that he heard voices that told him to kill people and admitted that he had killed Carroll.

(ECF No. 17-2, at 2-3.)

The Court of Appeals of Virginia summarized the applicable law as follows:[4]

> The Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 469-73 (1966), that the police must inform a suspect, who is subject to a custodial interrogation, of his right to an attorney and his right to have that attorney present during the interrogation. The police must explain these rights to the suspect before the interrogation begins. If a suspect waives his right to counsel after he has received *Miranda* warnings, the police officers are free to interrogate him, but if the suspect requests counsel at any time during the interrogation, the interrogation must cease until an attorney has been made available to the suspect or the suspect reinitiates the interrogation. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *accord Davis v. United States*, 512 U.S. 452, 458 (1994); *McNeil v. Wisconsin*, 501 U.S. 171, 176-77 (1991); *Minnick v. Mississippi*, 498 U.S. 146, 150 (1990); *Patterson v. Illinois*, 487 U.S. 285, 291 (1988); *Arizona v. Roberson*, 486 U.S. 675, 680-81 (1988).

*Commonwealth v. Redmond*, 264 Va. 321, 328, 568 S.E.2d 695, 698 (2002).
> The question whether a suspect actually invoked his right to counsel involves an objective inquiry. To invoke this right, a suspect must state his desire to have counsel present with sufficient clarity that a reasonable police officer under the circumstances would understand the statement to be a request for counsel. If, however, a suspect's reference to an attorney is either ambiguous or equivocal, such that a reasonable officer under the circumstances would only have understood that the suspect *might* be invoking his right to counsel, the officer is not required to stop questioning the suspect.

*Commonwealth v. Hilliard*, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005) (citations omitted).

(*Id.* at 1-2.) Applying the applicable law to the facts of Muhammad's case, the Court of Appeals

of Virginia aptly concluded:

The trial court determined that appellant's questions and the comments that followed did not constitute an unequivocal request for counsel. In order to

---

[4] The Court notes that the Court of Appeals of Virginia's opinion includes citations to many of the cases discussed in this Memorandum Opinion. For clarity, the Court does not alter the citations in the quoted portions of the Court of Appeals of Virginia's opinion.

determine whether a statement is sufficiently clear, unambiguous, and unequivocal to constitute an effective invocation of a suspect's right to counsel, we must consider the words the suspect actually used, as well as the context in which he spoke those words. *Hilliard*, 270 Va. at 50, 613 S.E.2d at 585. We do not consider any subsequent statements made by the suspect to determine whether his alleged invocation was ambiguous. *Smith v. Illinois*, 469 U.S. 91, 97 (1984). Rather, we look only to the alleged "request for counsel [and] the circumstances leading up to [that] request." *Id.* at 98.

In *Zektaw v. Commonwealth*, 278 Va. 127, 136–37, 677 S.E.2d 49, 54 (2009), the Virginia Supreme Court stated,

> Since *Miranda* and *Edwards*, we have reviewed several cases to determine whether a defendant's statement clearly, unambiguously, and unequivocally invoked his right to counsel. In some cases the defendants' statements were determined to be questions seeking clarification of their rights. *See Hilliard*, 270 Va. at 51, 613 S.E.2d at 585 ("'Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?'" was not an unequivocal request for counsel), *Commonwealth v. Redmond*, 264 Va. 321, 330, 568 S.E.2d 695, 700 (2002), *cert. denied*, 538 U.S. 930 (2003) ("'Can I speak to my lawyer? I can't even talk to [a] lawyer before I make any kinds of comments or anything?,' were not a clear and unambiguous assertion of his right to counsel"); *Mueller v. Commonwealth*, 244 Va. 386, 396, 422 S.E.2d 380, 387 (1992), *cert. denied*, 507 U.S. 1043 (1993) ("'Do you think I need an attorney here?'" did not constitute a request for counsel); *Eaton v. Commonwealth*, 240 Va. 236, 250, 252, 397 S.E.2d 385, 393, 395 (1990), *cert. denied*, 502 U.S. 824 (1991) ("You did say I could have an attorney if I wanted one?" was equivocal); and *Poyner v. Commonwealth*, 229 Va. 401, 410, 329 S.E.2d 815, 823, *cert. denied*, 474 U.S. 865 (1985) ("'Didn't you say I have the right to an attorney?' . . . was not a request for counsel . . . [a]t most, it sought to clarify one of the rights of which he had already been advised").

(*Id.* at 3 (alteration in original).) The Court of Appeals of Virginia explained that "[t]he facts support the trial court's finding that appellant's questions and comments were not an unequivocal request for counsel. Like in *Hilliard*, appellant's communications were seeking clarification of his rights, rather than advising the police that he was invoking his right to counsel." (*Id.* at 3–4.)

Upon review of the Court of Appeals of Virginia's decision and the record in this case, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). The record shows that the Circuit Court held a hearing on Muhammad's motion to suppress his statements to police officers. (June 26, 2012 Tr. 3–25.) At the hearing, Muhammad argued that he had invoked his right to counsel, and that the police officers had ignored this request and improperly continued questioning him. (June 26, 2012 Tr. 3.) The Circuit Court denied the motion to suppress, finding that Muhammad's statement was "not a clear, unequivocal and unambiguous request for an attorney." (June 26, 2012 Tr. 24–25.) On direct appeal, the Court of Appeals of Virginia reviewed the Circuit Court's ruling, and concluded that Muhammad's questions and comments about counsel were "not an unequivocal request for counsel." (ECF No. 17–2, at 3.)

Based on the Court's review of the record in this case, including the suppression hearing transcript and trial transcript, the record shows that during the exchange between Muhammad and the police officers, Muhammad asked questions and made comments regarding counsel. (*See* ECF No. 17–2, at 2–3.) Although Muhammad referenced counsel in his questions and comments to the police officers, a suspect's ambiguous reference to counsel, which does not clearly invoke the suspect's right to counsel, does not require police officers to cease questioning the suspect. *See Davis*, 512 U.S. at 459. Therefore, upon review of the record and the decision of the Court of Appeals of Virginia, the Court does not discern an unreasonable application of the above-cited United States Supreme Court precedent or an unreasonable determination of the facts. Accordingly, Claim One lacks merit and will be DISMISSED.

## B. Claim Two

In Claim Two, Muhammad contends that the evidence was insufficient to convict him of second-degree murder because the Circuit Court violated his "substantial right to due process[[5]] . . . when the trial court rejected the mental health expert's testimony that [he] suffered from disorders that would otherwise have excused criminal liability."[6] (§ 2254 Pet. 6.)

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

---

[5] The Court notes that, with respect to Muhammad's use of the words "due process," "[a]ny challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction." *West v. Wright*, 931 F.2d 262, 266 (4th Cir. 1991) (citations omitted), *rev'd on other grounds*, 505 U.S. 277 (1992). To the extent that Muhammad attempts to assert a separate due process claim, such a cursory statement is too vague to allege any new claim.

[6] In the context of addressing the timeliness of his § 2254 Petition, Muhammad presents an actual innocence argument. (§ 2254 Pet. 11–12.) Specifically, Muhammad states: "I am arguing that the statute of limitations, which is a procedural bar to the consideration of this petition, does not apply due to my claim that I am actually innocent of the crime for which I was convicted[] [b]ecause I was legally insane . . . ." (*Id.* at 11.) The Court notes that, contrary to Muhammad's assertion that his § 2254 petition is untimely, Muhammad timely filed his instant § 2254 Petition. Furthermore, to the extent that Muhammad seeks to raise a separate actual innocence claim, the United States Supreme Court does not recognize actual innocence as a stand-alone claim. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)). Additionally, as set forth herein, to the extent that Muhammad argues that the evidence was insufficient to convict him because he was legally insane, that argument lacks merit.

9

In finding that this claim lacked merit, the Court of Appeals of Virginia aptly

summarized the evidence of Muhammad's guilt as follows:

> The police found Carroll stabbed to death in her Portsmouth apartment on
> February 25, 2011. Carroll had been stabbed thirty-four times. A broken knife
> blade remained in her chest. Appellant's fingerprints were found in the
> apartment, and his DNA was on Carroll's body.
>
> When interviewed by the police, appellant said he went to Carroll's
> apartment alone and unarmed. Appellant lived in Carroll's building, and he
> occasionally ran errands for her. He pried open the door using a credit card. He
> obtained two knives from Carroll's kitchen. He then attacked Carroll as she slept.
> Afterward, he tried to clean the scene. He went down to his own apartment,
> washed his hands, and changed clothes. He left the apartment and walked around
> downtown. He threw away the clothing he had worn during the attack. Appellant
> also said he heard voices and that an alternate personality was involved in the
> incident.
>
> Dr. Evan Nelson testified on appellant's behalf as an expert in the field of
> forensic mental health. Nelson had interviewed appellant twice. He reviewed the
> documents and mental health treatment records relating to appellant. Nelson
> diagnosed appellant with "dissociative disorder not otherwise specified."[7]
> Nelson opined that while appellant was not legally insane under the *M'Naghten*
> test, he nonetheless had been acting pursuant to an irresistible impulse when he
> killed Carroll.
>
> Dr. Thomas Sugden, an expert in the field of clinical psychology,
> evaluated appellant on two different occasions and reviewed documents and
> mental health treatment records relating to appellant. Sugden opined that
> appellant did not have dissociative identity disorder or multiple personality
> disorder. Sugden concluded that appellant was not legally insane at the time of
> the offense.

(ECF No. 17–2, at 4–5.) With respect to Muhammad's insanity defense, the Court of Appeals of

Virginia summarized the applicable law as follows:

> "In Virginia . . . insanity is an affirmative defense that the defendant must
> establish to the satisfaction of the fact finder." *Morgan v. Commonwealth*, 50 Va.
> App. 120, 126, 646 S.E.2d 901, 902 (2007) (quoting *Shifflett v. Commonwealth*,
> 221 Va. 760, 769, 274 S.E.2d 305, 310 (1981)).
>
>> [U]nder the *M'Naghten* test for insanity, recognized in Virginia,
>> the defendant may prove that at the time of the commission of the
>> act, he was suffering from a mental disease or defect such that he
>> did not know the nature and quality of the act he was doing, or, if
>> he did know it, he did not know what he was doing was wrong.
>
> *White v. Commonwealth*, 272 Va. 619, 625, 636 S.E.2d 353, 356 (2006).

---

[7] *See, e.g.*, Jan. 22, 2013 Trial Tr. 158, 220.

> In addition [the Virginia Supreme Court has] approved in
> appropriate cases the granting of an instruction defining an
> "irresistible impulse" as a form of legal insanity. *See, e.g.,*
> *Thompson v. Commonwealth*, 193 Va. 704, 717, 70 S.E.2d 284,
> 292 (1952). "The irresistible impulse doctrine is applicable only to
> that class of cases where the accused is able to understand the
> nature and consequences of his act and knows it is wrong, but his
> mind has become so impaired by disease that he is totally deprived
> of the mental power to control or restrain his act." *Id.* at 718, 70
> S.E.2d at 292.

*Orndorff v. Commonwealth*, 279 Va. 597, 601 n.5, 691 S.E.2d 177, 179 n.5
(2010).

(*Id.* at 4 (alteration in original).) As to the irresistible impulse defense, the Court of Appeals of

Virginia summarized this defense as follows:

> In the context of the irresistible impulse defense, the Virginia Supreme
> Court has noted that "[t]he word 'impulse' implies that which is sudden,
> spontaneous, unpremeditated." *Rollins v. Commonwealth*, 207 Va. 575, 580, 151
> S.E.2d 622, 625 (1966) . . . . "Acting on an impulse involves no planning; it
> could occur at any place in the presence of anyone, and further, the lack of
> restraint inherent in an impulsive act is inconsistent with a contemporaneous
> concealment of the impulsive act." *Vann v. Commonwealth*, 35 Va. App. 304,
> 314, 544 S.E.2d 879, 883 (2001). In *Vann,* this Court found that a defendant's
> actions in "methodically tr[ying] to conceal the contraband on both occasions
> immediately after he realized he was being observed by a police officer" were
> "inconsistent with the notion of an individual having no mental power or control
> over his or her own conduct." *Id.*

(*Id.* at 5 (alterations in original).) In finding that sufficient evidence supported the Circuit

Court's determination that Muhammad was not legally insane at the time of the offense, the

Court of Appeals of Virginia explained:

> Where credible evidence supports the trial court's determination on the
> issue of insanity, the ruling should not be disturbed on appeal. *See Boblett v.*
> *Commonwealth*, 10 Va. App. 640, 652, 396 S.E.2d 131, 137 (1990). Moreover,
> "[t]he [fact finder] has a right to weigh the testimony of all the witnesses, experts
> and otherwise." *Walrod v. Matthews*, 210 Va. 382, 390, 171 S.E.2d 180, 186
> (1969) (quoting *Pepsi-Cola Bottling Co. of Norfolk v. McCullers*, 189 Va. 89, 99,
> 52 S.E.2d 257, 261 (1949)).
>     We find credible evidence supported the trial court's conclusion that
> appellant was not acting under an irresistible impulse when he killed Carroll.
> Appellant was able to relate a very clear recollection about how he entered

11

Carroll's apartment and killed her. After gaining entry, he armed himself with knives. He attacked Carroll as she slept. Appellant tried to conceal what he had done after the killing by cleaning the scene and himself and disposing of the clothing he had worn. The trial court was thus entitled to accept Sugden's opinion, find appellant had not acted through an irresistible impulse, and conclude beyond a reasonable doubt that appellant was guilty of second-degree murder.

(*Id.* at 5–6 (alterations in original).)

The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Despite Muhammad's argument to the contrary, the evidence was sufficient for any rational factfinder to reject Muhammad's insanity defense. As the Virginia Court of Appeals summarized in its decision, with respect to an insanity defense, "Virginia law recognizes two tests by which an accused can establish criminal insanity, the M'Naghten Rule and the irresistible impulse doctrine." *Reid v. True*, 349 F.3d 788, 802 (4th Cir. 2003) (quoting *Bennett v. Commonwealth*, 511 S.E.2d 439, 446 (Va. Ct. App. 1999)). "The M'Naghten Rule requires the defendant to prove that, because of a disease of the mind, he either did not know the nature and quality of his act or did not know that the act was wrong." *Id.* (citing *Price v. Commonwealth*, 323 S.E.2d 106, 108–10 (Va. 1984)). "The irresistible impulse defense is available when the accused's mind has become so impaired by disease that he is totally deprived of the mental power to control or restrain his act." *Id.* (quoting *Bennett*, 511 S.E.2d at 447). As to the irresistible impulse defense, "[i]mpulsivity is the essence of this definition of insanity; planning or deliberative conduct is inconsistent with the defense." *Id.* (citing *Vann v. Commonwealth*, 544 S.E.2d 879, 883 (Va. Ct. App. 2001)).

Here, two mental health experts, Dr. Evan Nelson and Dr. Thomas Sugden, testified during Muhammad's trial regarding Muhammad's mental state at the time of the attack. (Jan. 22, 2013 Trial Tr. 111–217.) The Court of Appeals of Virginia aptly summarized the experts' testimony in its opinion, explaining that Dr. Sugden testified that Muhammad "did not have

12

dissociative identity disorder or multiple personality disorder . . . [and] was not legally insane at the time of the offense." (ECF No. 17–2, at 5.) Dr. Nelson testified that Muhammad "was not legally insane under the *M'Naghten* test, [but] he nonetheless had been acting pursuant to an irresistible impulse when he killed Carroll." (*Id.*) As to the evidence of his guilt presented at Muhammad's trial, a forensic expert testified that Muhammad's fingerprints were present at the scene of the offense. (Jan. 22, 2013 Trial Tr. 68). A second forensic expert testified regarding the presence of Muhammad's DNA at the scene of the offense. (Jan. 22, 2013 Trial Tr. 81.) Additionally, Detective Funkhouser testified that Muhammad had admitted to killing the victim and had described his attempt to clean the scene of the offense and to dispose of the clothing he had worn during the attack. (Jan. 22, 2013 Trial Tr. 89–90, 96.) Despite Dr. Nelson's conclusion that Muhammad was acting under an irresistible impulse at the time of the offense, the Circuit Court found that there was sufficient evidence as to Muhammad's deliberative conduct to show that the irresistible impulse defense did not excuse criminal liability in Muhammad's case.

Based on the Court's review of the testimony from the mental health experts and the evidence regarding Muhammad's deliberative conduct, including his attempt to conceal the attack by cleaning the scene and throwing away his clothing, the evidence was sufficient for any rational factfinder to reject Muhammad's insanity defense. Furthermore, setting aside the issue as to whether Muhammad suffered from disorders that would excuse his criminal liability, the evidence presented at trial was sufficient for any rational factfinder to convict Muhammad. Specifically, Muhammad admitted to killing the victim, and his fingerprints and DNA were found at the scene of the offense. Thus, after reviewing the evidence and credibility determinations "in the light most favorable to the prosecution, [a] rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citing *Johnson*, 406 U.S. at 362). Accordingly, Claim Two lacks merit and will be DISMISSED.

## IV. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 15) will be GRANTED. Muhammad's claims will be DISMISSED, and his § 2254 Petition (ECF No. 1) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

/s/

Roderick C. Young
United States Magistrate Judge

Date: February 16, 2018
Richmond, Virginia

14